UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF NEW YORK

---

Jerome Thagard

    Plaintiff

Vs                                                 COMPLAINT

Mark Lauber

    Defendant

---

    The Plaintiff, Jerome A. Thagard, by his attorneys, Losi & Gangi, complaining of the Defendants, alleges:

    1. This action arises from the wrongful prosecution and conviction of the Plaintiff, Jerome A. Thagard, who was incarcerated for more than four years for the murder of Steven Northrup, ("Northrup") a crime which the Plaintiff did not commit.

    2. Northrup was murdered on April 29, 2009 at approximately 8:30 P.M. in the Riverside section of Buffalo, New York. Immediately before he was murdered, Mr. Northrup was engaged in an argument with Susanna D. Grover ("Grover") with whom he was cquainted. As the two were arguing in a field located nearby to the Schaefer Village Housing Project, they were observed by two women, Amanda Basile ("Basile"), Christine Piccone ("Piccone") and a child who were seated in a parked car. They observed a male approach the driver's side of the car and then run toward Northrup and Grover. As this was occurring, the women heard someone from the parking lot yell "Jerome, don't". The male who passed by the car, continued to run in the direction of Northrup and Grover. The women in the car observed this man displaying a handgun. The man exchanged words with Northrup

and then shot him seven times with a 9 millimeter pistol causing his death. After doing this, the man ran from the scene.

3. Following the shooting, Grover was brought to Buffalo Police Headquarters by members of the Buffalo Police Department. Her mother met her at this location. Later that same evening, the driver of the car was also brought to Buffalo Police Headquarters. She was identified as Basile.

4. A photo array was shown to both Grover and Basile.

5. The Defendant, Mark Lauber, ("Lauber") prompted Basile who was 16 years old at the time and had only an eighth grade education, to identify the Plaintiff as being the person she saw pass by the side of her car immediately prior to the shooting.

6. Basile was required to remain at Buffalo Police Headquarters until approximately 5:00 A.M. on the day following the shooting. The Defendant, Mark Lauber, interviewed her. He told her that he knew that she knew who shot Northrup and that if she didn't tell him, she would be arrested and sent to the Holding Center. He further told her that the shooting was her fault. She understood these statements to be threats. As he addressed her, Lauber began shouting and slamming his hands on the desk. This had the effect of causing Basile to begin crying and unable to speak. In response, Lauber gave her a piece of paper and a pen and told her to write her responses to his questions. At approximately 4:00 A.M. on April 30, 2009, she was then shown a photo array containing six photographs of black males.

7. The Plaintiff's photo was contained in the photo array based on a prior arrest for petit larceny in the Town of Cheektowaga, New York, which charge was ultimately dismissed.

8. Basile identified an individual from the photo array who, in her view appeared closest in appearance to the male she saw running past her car.

9. After Basile made this identification, Lauber, took the photo array and left the interview room. A few moments later, he came back into the room and told Basile that Grover had identified the same person from the photo array.

10. At the Plaintiff's criminal trial, Basile identified the Plaintiff as the male she saw that evening, notwithstanding the fact that she was not sure he was that person.

11. Grover was brought to Buffalo Police Headquarters.

12. Grover, who was only 18 years of age at the time, was extremely distraught and was repeatedly asked to tell her version of the events over and over.

13. The Defendant questioned Grover in an accusatory manner, suggesting that not only did she know the identity of the Northrup killer, but that she, herself, was involved. He repeatedly slammed his hand on the desk while shouting to her that she was hiding something and protecting someone. This he did repeatedly.

14. These accusations were followed up by the Defendant stating that the police found a knife and repeatedly questioned her in an accusatory manner.

15. Grover was directed to circle the picture of the individual shown in the photo array who looked most closely resembled the shooter. The Defendant told her that if she did not identify someone, she would be lying to him and covering up for another person. The Defendant, said Amanda (referring to Basile) has already told us who it is.

16. The photo array was then handed to Grover, who, as she reviewed it, moved her finger across each photograph. At one point, when she moved her finger close to the

photograph of an individual of someone other than the Plaintiff, the Defendant repeated "Amanda already picked someone out" and then said words to the effect of "come on, Susanna, you know who it is".

17. After this process was ongoing for approximately 15 minutes, Grover circled the photograph of the Plaintiff. When she did this, the Defendant, in her presence, said words to the effect of "we got it" and told her that Amanda had picked that photograph as well and he also told her the Plaintiff's name.

18. The passenger in the vehicle with Boyce, Piccone, also selected the Plaintiff from the photo array. This she did on the day following the shooting.

19. On April 30, 2009, the Plaintiff was taken by members of the Buffalo Police Department from Bennett High School where he was an 11th grade student. He was transported to Buffalo Police Headquarters where, under questioning he denied any involvement in the shooting, explaining to the police that at the time they said it occurred, he was at home watching television with his mother. Notwithstanding this alibi, the police charged the Plaintiff with murder and weapon possession.

20. At the time he was arraigned in Buffalo City Court, a local television station filmed him and later showed his face on a newscast.

21. On April 28, 2009, a woman walking home from her job, at midnight, was robbed, at gun point, approximately two blocks from the murder scene. The victim of this robbery viewed TV footage and identified the Plaintiff as the person who robbed her.

22. Based upon the identification testimony elicited by the Defendant and repeated at trial the Plaintiff was convicted of the murder of Northrup and sentenced on

April 12, 2010. The identifications constituted the only evidence linking him to the murder.

23. On September 17, 2010, the Plaintiff was acquitted of the robbery in a separate trial.

24. From discovery materials provided during the Plaintiff's criminal trial, it was learned that the murder weapon used to kill Steven Northrup on April 29, 2009 was also used in crimes committed on April 25, 2009 and on May 20, 2009 on the west side of Buffalo.

25. In an unrelated criminal prosecution in the U.S. District Court, a defendant charged there, admitted to the May 20 2009 shooting. He testified that this shooting was in furtherance of his membership in the so-called Tenth Street Gang. Because the Plaintiff was not a member of the Tenth Street Gang or known to have any association with this group, his counsel, on June 21, 2013 brought a motion to vacate his conviction pursuant to New York CPL 440.10. Affidavits from Basile and Piccone were made part of this motion as was a sealed affidavit from the attorney for a Tenth Street Gang member. The Erie County District Attorney's Office investigated the facts underlying this motion and on December 9, 2013, stated it had no opposition to the motion. The Plaintiff was released from custody that same evening and on January 13, 2014, the indictment against him was dismissed.

26. Prior to his release from custody the Plaintiff was incarcerated for more than four years, despite the fact that he is factually innocent of the crime for which he was convicted.

27. This lawsuit seeks to bring to light the actions of the Defendant that caused the Plaintiff, Jerome A. Thagart to be taken from his high school class and ultimately incarcerated for more than four years for a murder he did not commit while, at the same time, closing a

murder investigation when the person actually responsible for the crime remained unapprehended and to vindicate the Plaintiff's constitutional rights and compensate him for the time taken away from him as well as the suffering he will continue to endure into the future.

## JURISDICTION

28. This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331, over claims arising under 42 U.S.C.§1983.

29. Pursuant to 28.U.S.C §1391(b), venue is proper in the Western District of New York, the judicial district in which the claim arises.

## JURY DEMAND

24. Pursuant to the Seventh Amendment of the United States Constitution, the Plaintiff requests a jury trial on all issues and claims set forth in this Complaint.

## PARTIES

25. The Plaintiff, Jerome Thagard is and was at all times relevant to this Complaint, a Citizen of the United States who previously resided in the City of Buffalo, New York. He currently resides in Kitchener, Ontario, Canada.

26. The Defendant, Mark Lauber, at all times relevant to this Complaint, was a duly appointed detective acting under the color of law and in his individual capacity within the scope of his employment pursuant to the statutes, ordinances, regulations, policies customs, and useages of the City of Buffalo Police Department and the State of New York.

Upon information and belief, he is entitled to indemnification under N.Y. Gen. Mun. Law §50-j and by contract.

## DAMAGES

27. The actions of the Defendant acting within the scope of his employment and agency for the City of Buffalo deprived the Plaintiff, Jerome Thagard of his rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution.

28. As a direct and foreseeable result of the Defendant's unfounded insistence that the Plaintiff, Jerome A. Thagard murdered Steven Northrup and the grossly improper and unconstitutional investigation of this crime, the Plaintiff, Jerome A. Thagard was incarcerated for more than four years for a crime which he did not commit.

29. The negligent, unlawful, intentional, willful, deliberately indifferent, reckless and bad faith acts and omissions of the Defendant caused Jerome A. Thagard the following damages, which continued to date and will continue into the future: severe mental anguish; emotional distress; loss of family relationships; loss of income and earning capacity; loss of educational opportunity; humiliation; indignities and embarrassments; degradation; loss of natural psychological and social development; and restrictions and all forms of personal freedom including but not limited to diet; sleep, personal contact, educational opportunities, vocational opportunities, personal fulfillment, voluntary sexual activity, family relationships, reading, television, movies, travel, enjoyment of expression for which he is entitled to monetary relief.

30. The non-negligent acts and omissions committed by the Defendant described

above for which liability is claimed were done intentionally, unlawfully, maliciously, wantonly, recklessly, and with bad faith, said acts meeting all of the standards for imposition of punitive damages.

### AS AND FOR A FIRST CAUSE OF ACTION, THE PLAINTIFF ALLEGES:

### 42 U.S.C. §1983 Fourth and Fourteenth Amendment Claim For Malicious Prosecution.

31. The Plaintiff hereby incorporates by reference, all of the foregoing paragraphs.

32. The Defendant, with malice and knowing that probable cause did not exist to arrest the Plaintiff and prosecute him for the murder of Steven Northrup, caused the Plaintiff to be arrested, charged and prosecuted for that crime thereby violating his clearly established right under the Fourth and Fourteenth Amendments of the United States Constitution to be free of unreasonable searches and seizures.

33. Specifically, this Defendant, acting individually intentionally and knowingly, deliberately manipulated and coerced Grover and Basile, to select the Plaintiff's picture from a photo array.

34. The Defendant performed the above described acts under color of state law, deliberately, intentionally with malice and reckless disregard for the truth and the Plaintiff's rights.

35. The Defendant initiated and continued the prosecution against the Plaintiff without probable cause, in violation of his clearly established constitutional rights. No reasonable officer in 2009 would have believed this conduct was lawful.

36. As the Plaintiff has maintained throughout the more than four years of his wrongful incarceration, he is innocent of the Northrup murder.

37. The prosecution finally terminated in the Plaintiff's favor on December 9, 2013 when the Plaintiff was released from custody and on January 13, 2014 when the indictment was dismissed.

38. As a direct and proximate result of the Defendant's conduct, the Plaintiff was maliciously prosecuted, wrongfully convicted and imprisoned for more than four years and suffered the other grievous and continuing damages as set forth above.

### AS AND FOR A SECOND CAUSE OF ACTION, THE PLAINTIFF ALLEGES:

**42 U.S.C. § 1983 Fourteenth Amendment Claim for Depravation of Liberty Without Due Process of Law and Denial of a Fair Trial By Withholding Material Exculpatory and Impeachment Evidence; First and Fourteenth Amendment Claim For Deprivation of Rights of Access to Courts and Executive Clemency.**

39. The Plaintiff repeats and realleges the allegations set forth in the foregoing Paragraphs.

40. The Defendant, by manipulating and coercing the false identification of the Plaintiff, withheld material exculpatory and impeachment evidence from prosecutors, thereby depriving the Plaintiff of his clearly established constitutional rights under the Fourteenth Amendment of the United States Constitution including but not limited to his right to a fair trial, his right not to be deprived of liberty as the result of the use of faulty evidence, coerced by a government investigator and his right not to be deprived of liberty without due process of law. The Defendant knew that the manipulated and coerced identifications were unreliable but concealed this information and allowed the faulty identifications to be used as evidence at trial to obtain the Plaintiff's conviction.

41. Additionally, the Defendant had an affirmative constitutional obligation to come forward with the truth during each year after the Plaintiff's conviction until he was

released on December 9, 2013. Instead, the Defendant intentionally and with reckless indifference, did not disclose and instead, continued to suppress the truth. The Plaintiff could have used a truthful description of these facts to secure adequate, effective and meaningful access to the courts via a motion for a new trial. The Plaintiff could also have used any of these facts, at any time after his conviction to secure adequate, effective and meaningful access to executive clemency mechanisms such as parole or pardon.

42. By ignoring his affirmative obligation to disclose these facts in the years 2009 through 20013, the Defendant violated the Plaintiff's clearly established First and Fourteenth Amendment rights to meaningful access to the courts and executive clemency mechanisms.

43. The Defendant committed these acts under color of state law, intentionally, with reckless disregard for the truth and with deliberate indifference to the Plaintiff's clearly constitutional rights. No reasonable officer in 2009, or since, would have believed this conduct was lawful.

44. As a direct and proximate result of the Defendant's actions, the Plaintiff was wrongfully convicted and imprisoned for more than four years, deprived of post-conviction mechanisms of relief, and suffer the other grievous and continuing damages and injuries set forth above.

WHEREFORE, the Plaintiff demands judgment against the Defendant as follows:

A. That the Court award compensatory damages against the Defendant in an amount to be determined at trial;

B. The Court award punitive damages to him and against the Defendant in

an amount to be determined at trial that will deter such conduct in the future;

    C.   For trial by jury;

    D.   For a pre-judgment and post-judgment interest and recovery of his costs, Including reasonable attorneys' fees pursuant to 42 U.S.C. §1988 for all 42 U.S.C. § 1983 claims; and

    E.   For such other relief to which he may be entitled.

Dated: Buffalo, New York
       April 18, 2016

_____
Patrick J. Brown, Esq.
Losi & Gangi
Attorneys for the Plaintiff
147 Linwood Avenue
Buffalo, New York 14209
(716) 854-1446