UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF NEW YORK

---

Jerome Thagard

        Plaintiff

                                  Index No. 16-CV-299

      Vs

Mark Lauber

         Defendant

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**PRELIMINARY STATEMENT**

This Memorandum of Law is submitted in opposition to the Defendant's Motion for Summary Judgment dismissing the Complaint.

As appears more fully from the Complaint (DKT# 1), this is an action based upon the actions of the Defendant, a former City of Buffalo police detective. The gravamen of the action is that he engaged in improper conduct at the time he solicited eyewitness identifications during the course of a murder investigation. It is further alleged that the Defendant acted contrary to the policies and procedures of the Buffalo Police Department as well as contrary to well established police practices in the manner in which he displayed a photo

1

array to two eyewitnesses.  This behavior of the Defendant resulted in the malicious prosecution of the Plaintiff, and violated his right to a fair trial. Because the Defendant acted knowingly and intentionally, he does not enjoy qualified immunity for his actions.

There exist genuine issues of material fact and as a result, the Defendant's motion should be denied.

## STATEMENT OF FACTS

The facts of this case, generally, are set forth in the Defendant's Statement of Material Facts and the Plaintiff's Appendix.  Set forth, here, are facts central to the causes of action alleged in the Complaint.

There are three individuals who have been identified as eyewitnesses to the murder of Steven Northrup.  This crime was committed on April 29, 2009 at approximately 8:30 P.M. in a field located in the Riverside section of the City of Buffalo, New York.  (DKT# 22-15 at 19).  At the time the murder took place, Deanna Grover, Steven Northrup's girlfriend, was also present in the field and engaged in an argument with him.  (DKT#22-18 at 17,38).  The two other witnesses, Amanda Basile and Christine Piccone, were located nearby in a parked vehicle.

After the murder was committed, all three of these witnesses were interviewed by Buffalo Police Detectives. (DKT# 22-18 at 25. DKT# 22-17 at 21, DKT# 22-15 at 14).   The three witnesses testified at the jury trial of the Plaintiff, Jerome Thagard.

Christine Piccone was not interviewed by the Defendant.  She came to the Buffalo Police Department the day following the Northrup murder and was interviewed by a different Buffalo Police Detective.  Although she was not subject to the improper conduct perpetrated by the Defendant with eyewitnesses Basile and Grover, at a later point in time, she did admit that she was not certain when she identified the Plaintiff from a photo array.  (DKT# 22-21).

On the day of his arrest, Aril 30, 2009, , the Plaintiff was a teenager who reported to Bennett High School where he was an 11th grade student. ( Exhibit CC at  36).  When he arrived, a security officer directed him to the office where he sat for ten or fifteen minutes. before two plainclothes policemen placed him in handcuffs and removed him from the building.  (Exhibit CC at 38-39).  The morning of his arrest, was the last time the Plaintiff was at liberty until  his release from prison, after his conviction was vacated on January 13, 2014.

After the Plaintiff's conviction and after the Plaintiff had been incarcerated for more than four years, witnesses Basile and Grover provided information, which, among other things, detailed the manner in which they were improperly questioned by the Defendant.  These witnesses further described how the Defendant's behavior caused them to misidentify the Plaintiff as the individual who shot Steven Northrup.  (Exhibit V, W Dkt # 22-21)

As a result of the information provided by Basile and Grover,  as well as other information regarding the firearm used in the murder, the Plaintiff's conviction was vacated.  (Exhibit Z).

## ARGUMENT

**Point I.  Substantial questions of fact preclude the grant of summary judgment.**

To be entitled to summary judgment, the Defendant must demonstrate "the absence of any material factual issue genuinely in dispute." *Heyman v. Commerce & Industry Insurance Co.,* 524 F. 2d 1317, 1320 (2d Cir. 1975)(citation omitted).

The  record must be construed in the light most favorable to the Plaintiff and all reasonable inferences must be drawn to his advantage.  (*United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S. Ct. 993( 1962).

In the context of the instant action, it is noteworthy that a question of fact is material if it involves information that goes to the issue of probable cause. *McColley v. County of Rensselaer,* 740 F. 3d 817, 828 (2d Cir. 2014).

The affidavits of witnesses Basile and Grover, as well as the affidavit of former Erie County District Attorney Frank Sedita, (DKT# 22-22 ) establish that the photo array procedures employed by the Defendant led to the irreparable misidentification of the Plaintiff.  Moreover, given the fact that the Defendant conducted the photo array display in a manner directly contrary to the written policy of the City of Buffalo Police Department, the instructions contained on the photo array form itself, and in derogation of well-established police practices creates questions of fact which preclude a grant of summary judgment.

The policy of the Buffalo Police Department, at the time of the Plaintiff's

arrest, was to utilize "double-blind" photo arrays. By this phrase, is meant that the personnel who organized the photo should be different than the personnel who show the photo array and the personnel showing the array should not know who the suspect is. (Exhibit BB).

In contravention of this policy, the Defendant both assembled the photo array and displayed it to Grover and Basile. (DKT 22-20 at pp. 9, 10, 15-17, 27 and 28).

On December 13, 2012, Amanda Basile was interviewed by a police detective, other than the Defendant. She stated, among other things, that "...the detective left with the photo and when he came back, he said that's who Deanna picked and that the name Jerome matched what I heard so that's when I figured it must be him." She further stated, at trial, she never focused on the Plaintiff's face when she identified him in the courtroom. When asked about how she felt on the day she made the identification from the photo array, her statement was "I was scared to death. I was only 16 years old and the detective was yelling at me and stuff." (Exhibit V).

Eyewitness Deanna Grover was re-interviewed by a different City of Buffalo Police Detective after the Plaintiff's conviction. This interview took place on January 11, 2013. In the interview, Ms. Grover was asked about the circumstances surrounding the display, to her, of the photo array containing the Plaintiff's picture on April 30, 2009. She stated that when she first looked at the photo array, she told the Defendant that none of the individuals shown in the photographs were familiar to her. She then stated that a male detective (the

Defendant Mark Lauber), said to her, "look again, because someone else already Identified a person on one of the pages as the person that killed him". She further stated that she wouldn't sign the photo array, until she was provided with the name and address of the individual whom she selected. She also agreed to take a polygraph examination. (Exhibit W).

As part of the Plaintiff's motion to vacate his conviction, Amanda Basile provided an affidavit to the defense in which she stated that when the Defendant showed her the photo array, he told her that she knew who shot Steven Northrup and that if she did not tell him, she would be arrested. She further stated that she felt threatened by the detective. In that affidavit, Ms. Basile also points out that after she made her identification from the photo array, the Defendant left the room and then returned and told her that Deanna Grover identified the same person. She stated that "when I identified the picture, I didn't believe it was the same man I saw earlier. After I was told Deanna picked out the same person, I became convinced." (DKT# 22-21 at 11-10).

At the time of her interview by the Defendant, Amanda Basile was 16 years of age and had only an eighth grade education. (DKT# 22-5).

The Defendant displayed photo arrays to witnesses Basile and Grover at approximately 4:00 A.M.on April 30, 2009. (DKT#22-14 at 6, 16).

Identification evidence is comparable to physical evidence and may have greater impact. In some instances, it may have greater impact even than confession evidence and it tends to increase the perceived strength of other evidence presented. *Young v. Conway,* 698 F. 3d 69, 88 (2d Cir. 2012)(citing *(*Melissa Boyce, et al, *Belief of Eyewitness Identification Evidence, in 2* handbook

6

of eyewitness psychology:  Memory for People, 501, 505 (R.C.L.Lindsay et al. eds. 2007).

It is rudimentary police practice to treat identification evidence, and in particular, the display of show-up photographs with great care. (Exhibit AA)

The two principal identification witnesses at the Plaintiff's criminal trial were Amanda Basile and Deanna Grover who were interviewed on the night of the crime.   An identification was also made the following day by Christina Piccone.  As set forth above, the Defendant acted grossly improperly in the manner in which he displayed the photo arrays to these witnesses.  Not only did he threaten Amanda Basile with arrest, but also, he provided conformational information to both witnesses, telling them that each other had identified the same individual.  It was principally on the basis of this flawed identification procedure that the Plaintiff's conviction was set aside. (DKT# 22-22).

It has long been established that pretrial identification procedures including photo array displays have to be conducted in a manner which is not unduly suggestive. *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243 (1977).  There can be no question but that the Defendant knew it was patently improper to threaten an identification witness with arrest if she did not select an individual from a displayed photo array.  Similarly, confirming an identification witness' selection from a photo array by telling her that another identification witness had selected the same individual is also beyond the pale.  This is all the more so when the Defendant knew that both identification witnesses were friends.

The importance of noting the altogether defective identification procedure

employed by the Defendant is that it cannot support a finding of probable cause. "An identification cannot be used to support probable cause if the identification procedure was 'so defective that probable cause should not reasonably be based upon it'". *Dufort v. City of New York,* 874 F. 3d 338, 348 (2d Cir. 2017) (quoting *Stansbury v. Wertman,* 721 F. 3d 84, 91 n. 7*(*quoting *Jenkins v. City of New York,* 478 F. 3d 76, 93 (2d Cir. 2007)).

This is a very important point, because the Defendant, in his motion seeks to insulate his actions by claiming that the Plaintiff's arrest and prosecution was based on a finding of probable cause. This tactic must fail, however, because there can be no probable cause when the Defendant knew that he conducted the photo array display improperly.

Not only did the Defendant conduct an unduly suggestive identification procedure, but he did not disclose that he had done so at either the Wade Hearing or at trial.

When an officer engages in investigative abuse, he becomes an initial wrongdoer in the prosecution of a criminal defendant. *Wray v. City of New York,* 490 F. 3d 189, 195 (2d Cir. 2007).

"It would be a perverse doctrine of tort and constitutional law that would hold liable the fabricator of evidence who hands it to an unsuspecting prosecutor but exonerate[s] the wrongdoer who enlists himself in a scheme to deprive a person of liberty." *Zahrey v. Coffey,* 221 F. 3d 342, 353 & n. 10 (2d Cir. 2000).

**Point II    Malicious Prosecution.**

As stated above, no reasonable police officer in the year 2009 would have believed that the conduct engaged in by the Defendant was lawful.  The Defendant seeks to shield his conduct by relying on his claim of probable cause.

However, because he engaged in deliberate misconduct resulting in an irreparable misidentification of the Plaintiff, he cannot claim the protection of probable cause.

Under New York State law, the Plaintiff must establish four elements in order to  prevail on a claim of malicious prosecution.  "(1) the initiation or continuation of a criminal proceeding against the Plaintiff;  (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for a defendant's actions." *Murphy v. Lynn,* 118 F. 3d 938, 947 (2d Cir. 1997).

The Defendant claims that the Plaintiff cannot establish the first, third or fourth elements of his malicious prosecution claim.  (Defendant's Memorandum of Law (DKT# 22-25 at 5)).  The lack of probable cause on the part of the Defendant has already been demonstrated.  The Defendant also maintains that there has been no showing of actual malice as a motivation for  Defendant's actions.  *Id.*  However, this claim lacks support in the record.  Deanna Grover has stated, in her affidavit, that after she said that none of the individuals in the photo array were the shooter, the Defendant said to her "look again, because somebody already identified a person,  on one of the pages is the person that killed him".  (Exhibit W).  Amanda Basile stated, in her affidavit,that the Defendant was yelling at her as he showed her the photo array (Exhibit V).  In a

subsequent affidavit, this witness further stated that the Defendant threatened her at the time she was shown the photo array stating that if she didn't tell him who shot Steven Northrup, she would be arrested. (DKT# 22-21). These actions, undertaken by the Defendant at the time he showed the photo arrays to the witnesses at a minimum, creates a question of fact regarding his actual malice.

The Second Circuit has held that the lack of probable cause generally raises an inference of malice sufficient to withstand summary judgment. *Lowth v. Town of Cheektowaga,* 82 F. 3d 563, 573 (2d Cir. 1996).

If the Defendant's improper photo array display conduct came to light prior to the jury returning its verdict in the Plaintiff's criminal trial, likely, the prosecution would have come to a halt. The Defendant, however, concealed his activity which allows the Plaintiff to establish the initiation/continuation element of a claim for malicious prosecution. *Davis v. Velez,* 797 F. 3d 192 , 212 (2d Cir. 2015).

It is the Defendant who caused the misidentifications to occur. He cannot escape liability for his actions by now arguing that it was the district attorneys' office who decided to move forward with the charges against the Plaintiff. The criminal case only progressed because of the faulty identification. The then District Attorney of Erie County, in  his affidavit in support of the People's motion to dismiss the Indictment in furtherance of justice, following the Plaintiff's conviction and incarceration stated, among other things, that "the charges arose from the murder of Steven Northrup in April of 2009. The principal evidence at trial consisted of testimony from three eyewitnesses who had each identified the Defendant from a photo array.   (DKT#22-22 at ¶5).

Nowhere in the record does it appear that the Defendant informed prosecutors of the actual manner in which he conducted the photo array questioning of witnesses Grover and Basile.  He continued to be involved in the criminal prosecution of the Plaintiff, testifying at both the pretrial identification hearing and at trial.  Accordingly, this is not a case where the link between the Defendant's misconduct and the prosecution was severed so as to shield him from liability on the Plaintiff's malicious prosecution claim. *LaFontaine v. City of New York,* Slip Opinion, 2009 W.L. 3335362 (S.D.N.Y. 2009).  Instead, this is a case where the defendant knew, or should have known, that the photo array display was so flawed that the identification of the Plaintiff was unreliable.  See, *Norwood v. Mason,*  524 Fed. Appx. 762, 765 (2d Cir. 2013).

The Defendant further seeks to shield his actions claiming qualified Immunity.  A defendant is entitled to qualified immunity if neither "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law".  *Russo v. City of Bridgeport,*   479 f. 3d 196, 211 ( 2d Cir. 2007)(internal quotation marks omitted).  The Supreme Court has cautioned that the qualified immunity inquiry quote must be undertaken in light of the specific context of the case, not as a broad, general proposition."  *Brosseau v. Haugen,* 543 U.S. 194, 198 (2004).  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  In his questioning of Amanda Basile, the Defendant was dealing with a 16 year old girl with an

eighth grade education.  He yelled at her, threatened her with jail if she did not

provide an identification and then confirmed, to her, that the photo she selected

is the same one selected by Deanna Grover.  In questioning Deanna Grover, the

Defendant was told by her that she could not identify anyone from the photos.  In

response, the Defendant told her to look again, because someone else had

already identified the person on one of the pages.  The Defendant had to have

known that his conduct was improper.  It was contrary to the "double-blind"

procedure required by the City of Buffalo Police Department policy then in effect

(Exhibit DD).  The Defendant's behavior is also contrary to the instructions printed

on the photo array, itself, "do not tell other witnesses that you have or have not

identified anyone." (DKT# 22-7 at 1).  Finally, his actions were contrary to long

established police practices. (Exhibit AA).


**Point IV.  The Defendant's actions resulted in the Plaintiff being denied his Constitutional right to a fair trial.**


The  Second Cause of Action, in the Complaint, sets forth a claim for the

denial of the right to a fair trial.

In the context of an impermissibly suggestive identification procedure, the

due process focus is principally on the fairness of the trial, rather than on the

conduct of the police officer. *Wray v. Johnson,* 202 F. 3d 515, 524 (2d Cir.

2000)(citations omitted).

It is well settled that a constitutional right exists not to be deprived of

liberty on the basis of false evidence fabricated by a government officer.

*Zahrey v. Coffey,* 221 F. 3d 342, 355 (2d Cir. 2000).  Such a claim is properly

pled where plaintiff alleges that the defendant caused fabricated evidence to be forwarded to prosecutors and that he had likely influenced the jury's decision. *McHenry v. Bell,* 2015 WL 2354438, at *8. (N.D.N.Y. 2015)(citations omitted). "When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused constitutional right to a fair trial…"  *Ricciuti v. N.Y.C. Transit Authority,* 124 F. 3d 123, 130 (2d Cir. 1997).

The right to a fair trial is guaranteed by the Sixth Amendment which is applicable to state actors under the Fourteenth Amendment due process clause.  See, *Tennessee v. Lane,* 541 U.S. 509, 523 (2004).

The Plaintiff has alleged facts sufficient to establish a cause of action for the violation of his right to a fair trial.  The Defendant, in his motion for summary judgment cannot overcome the clearly disputed material facts.  He cannot avoid the improper identification procedure which he caused and perpetuated throughout the prosecution of the Plaintiff.  The affidavits of witnesses Basile and Grover are in direct contravention of the Defendant's description of the events surrounding the display of the photo array. Accordingly, summary judgment is not appropriate and the Plaintiff is entitled to his day in court.


**Point V.   Neither the doctrine of *Res Judicata nor the doctrine of Collateral Estoppel* is inapplicable to this action.**


In his supporting Memorandum of Law, the Defendant argues that the Plaintiff's claim is barred by the doctrines of *Res Judicata* and/ or *Collateral*

*Estoppel. (DKT# 22-25 at 13-15)*.  The Defendant's argument on this issue appears to be distilled at page 14 where it is stated that " [h]ere, the Plaintiff had the full opportunity to litigate and challenge the methods used by Det. Lauber (as well as Det. Vaughn, and others involved in the investigation) in conducting a photo array, and they apparently failed to do so".

   At the outset, it is noted that when a civil action follows a criminal prosecution, the parties are different and as a result, the doctrine of *Collateral Estoppel* can be considered but not the doctrine of *Res Judicata.  Neaderland v. C.I.R.,* 424 F. 2d 639, 641 (2d Cir. 1970).

   Among the elements necessary to establish *collateral estoppel* under New York law is the requirement that the party against whom the doctrine is to be applied, had a full and fair opportunity to litigate the issue.  *Uzdavines v. Weeks Marine, Inc.,* 418 F. 3d 138, 146 (2d Cir. 2005).

   In the case at bar, the Plaintiff did not have a full and fair opportunity to litigate the issue of the Defendant's misconduct in displaying the photo array to eyewitnesses.

   In part, the Plaintiff was denied this opportunity because of the Defendant's concealment of his actions undertaken during the time he displayed the photo arrays to eyewitnesses Basile and Grover.  This is in contrast to the fact pattern in *Allen v. McCurry,* 449 U.S. 90 (1980) relied upon by the Defendant. (DKT 22-25 at 13).  In *Allen,* the Plaintiff was present at the time of the search and assault which served as the basis for his lawsuit.  As a result , he had knowledge of and access to the relevant facts and was in a position to litigate issues related to his claim.  In contrast, Jerome Thagard had no knowledge of the identity of the

eyewitnesses to whom the photo arrays were displayed.  This information was sought by Plaintiff's counsel during the criminal prosecution but was denied. Instead, at the *Wade* hearing, eyewitnesses Basile, Grover and Piccone were designated as witnesses A, B, C.  (DKT# 22-14 at 13, 15, 50).  Moreover, the plaintiff, in *Allen,* brought a 1983 action after his conviction at trial was affirmed, on appeal, and he was unable to bring a *habeus corpus* proceeding in Federal District Court.  *Allen,* 449 U.S. at 91.

    In contrast, after his conviction at trial, Jerome Thagard's conviction was vacated and set aside.  The Erie County District Attorney's Office joined in the motion to vacate the conviction principally, upon the misidentification of the Plaintiff.  (DKT# 22-22).

    The Defendant should not be permitted to shield his unconstitutional behavior by the affirmative use of the doctrine of *collateral estoppel.* The *Wade* hearing, conducted during the course of the Plaintiff's criminal prosecution, is an integral component of the right to a fair trial.  *United States v. Wade*, 388 U.S. 218 (1967).  As set forth in Point IV *infra.*, the Defendant violated the Plaintiff's Sixth Amendment right by his improper actions in conducting the photo array display.  However the Plaintiff did not have a full and fair opportunity to litigate this issue at the Wade Hearing both because of the Defendant's actions as well as the fact that the identity of eyewitnesses Basile and Grover were kept from him until the time of trial.

## CONCLUSION

    Based on all of the foregoing, it is respectfully submitted that substantial

questions of material fact exist which preclude the grant of summary judgment

to the Defendant.

Dated:  Buffalo, New York
         January 15, 2018



                        S/ Patrick J. Brown
        _____
                        Patrick J. Brown, Esq.
                         Losi & Gangi, PLLC
                        Attorneys for the Plaintiff
                        147 Linwood Avenue
                        Buffalo, New York   14209
                        (716) 854-1446
                         John Molloy